IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE LOPEZ,<br><br>    Petitioner,<br><br>v.<br><br>SUPERINTENDENT, SCI ALBION, *et al.*,<br><br>    Respondents. | CIVIL ACTION NO. 17-3952 |

**MEMORANDUM OPINION**

**Rufe, J.**                            **April 28, 2021**

  Petitioner Jose Lopez was found guilty by a Philadelphia Court of Common Pleas jury of first-degree aggravated assault and possessing an instrument of crime.[1] Petitioner was also separately convicted by the trial court, after waiving his right to a jury trial, on charges under the Uniform Firearms Act.[2] He received an aggregate sentence of twelve and one-half to twenty-five years' imprisonment and is currently incarcerated.[3]

  Petitioner, represented by counsel, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, asserting a violation of the *Brady* rule[4] and ineffective assistance of trial counsel. The petition was referred to Magistrate Judge Lynne A. Sitarksi, who submitted a Report and Recommendation ("R&R") recommending that the Court deny the petition without

---

[1] 18 Pa. Cons. Stat. §§ 907(a) and 2702(a)(1).

[2] 18 Pa. Cons. Stat. §§ 6105, 6106, and 6108.

[3] *See Commonwealth v. Lopez*, 57 A.3d 74 (Pa. Super. Ct. 2012).

[4] *See Brady v. Maryland*, 373 U.S. 83 (1963).

the issuance of a certificate of appealability.[5] Petitioner has filed objections.[6] For the reasons stated below the Court will overrule Petitioner's objections and approve the R&R.

I. **BACKGROUND**

Petitioner was convicted of shooting Maurice Robinson in the thigh at around 4 a.m. on December 2, 2008. A warrant for Petitioner's arrest was approved on December 4, 2008, but he was not arrested until July of 2009.[7] The trial was held in December of 2010.

At trial, Robinson testified that in the early morning of December 2, 2008, he was standing on the corner of 5th and York when he saw Petitioner, "clear as day," across the street walking his dog with an older lady.[8] Robinson testified that Petitioner stopped and looked at him for a few minutes, gave the dog leash to the lady, and went and grabbed something.[9] Petitioner then crossed the street, walked right up next to Robinson, and fired "two or three shots" from a small-caliber, semiautomatic pistol, hitting him once in the leg.[10] Both ran in opposite directions, and Robinson called the police from a pay phone.[11] The next day, officers brought Robinson to the police station, where he made a statement and identified Petitioner in a photo spread.[12]

---

[5] *See* Doc. No. 15.

[6] *See* Doc. Nos. 17, 19.

[7] N.T., Trial, 12/10/10 at 203.

[8] *Id.* at 34. Robinson testified that at the time of the shooting, he had finished selling drugs for the day. *Id.* at 71.

[9] *Id.* at 39–40.

[10] *Id.* at 43–44, 47–48, 51.

[11] *Id.* at 53.

[12] *Id.* at 63. The jury also heard testimony that Robinson initially told officers that he had been robbed of $40, and that when he identified Petitioner in the photo spread, he said that he looked "more scruffy" and "beat-up" than he was in the photo. *Id.* at 142–43, 173. Petitioner argues that these statements contradict Robinson's testimony.

2

Robinson further testified that although he didn't know Petitioner's name, he recognized him from the neighborhood.[13] Robinson testified that he sold heroin on the corner of 5th and York[14] and that Petitioner also sold drugs on that same corner, but at different times of the day.[15]

The Commonwealth presented evidence that three shell casings were found at the scene of the shooting: two .25 caliber and one .22 caliber.[16] The two .25 caliber casings were the same brand and were fired from the same gun, and the .22 caliber was a different brand from a different gun.[17] The Commonwealth also presented a box of .25 caliber ammunition, found in Petitioner's room during the execution of a properly served search warrant, that was the same brand as the .25 caliber casings found at the scene of the shooting.[18] In Petitioner's room, the officers also found mail addressed to Petitioner's alias, Angel Adorno, and letters to Angel from his girlfriend at the time, Jamie Eisenhuth.[19]

Eisenhuth was an uncooperative witness for the Commonwealth. She testified that she had a relationship with Petitioner from approximately July 2006 to February 2009, had known Petitioner as Angel Adorno, and had written the letters found in his room.[20] She also testified that she and Petitioner lived together in her apartment and that while they dated and that

---

[13] *Id.* at 74.

[14] At the time of the trial, Robinson was incarcerated for selling drugs. *Id.* at 28.

[15] *Id.* at 29, 99. Robinson testified that he and Petitioner had friends and acquaintances in common. *Id.* at 103.

[16] *Id.* at 182.

[17] The Commonwealth argued that the .22 caliber casing was likely from an unrelated shooting. N.T., Trial, 12/13/10 at 123–24.

[18] N.T., Trial, 12/10/10 at 196, 198.

[19] *Id.* at 199.

[20] *Id.* at 47, 49, 52–54.

3

Petitioner would sleep at her apartment every night.[21] Eisenhuth further testified regarding a letter she had written to Petitioner; she testified that she had written the following: "The only times I see you is when you're asleep, about to go out or in a fight. I'm only insecure partly because you would rather be in the street than be doing something with me."[22]

Petitioner appealed his convictions, and after his direct appeal was denied,[23] filed a timely petition under the Post-Conviction Relief Act (PCRA). On March 16, 2015, while the PCRA petition was pending, Petitioner filed a motion for discovery, requesting a surveillance video from the Happy Garden Restaurant located at 501 West York Street in Philadelphia near the scene of the shooting. Petitioner argued that a police photograph showed what appeared to be an external camera at the restaurant.

The PCRA court held a hearing and asked the Commonwealth to determine if they were in possession of the surveillance video.[24] The assistant district attorney responded:

> Pursuant to the Court's request, I have searched the trial file and the Police Integrated Information Network for Discovery (PIIN) for the video of the recording from the crime scene which you claim the Commonwealth failed to provide. Please be advised that I have been unable to find any such video in either location.[25]

The PCRA court denied discovery and dismissed the PCRA petition without a hearing.[26] Petitioner appealed to the Superior Court.

---

[21] *Id.* at 64.

[22] *Id.* at 60–61.

[23] *See Lopez*, 57 A.3d at 76.

[24] N.T., Hearing, 3/16/15 at 22.

[25] Doc. No. 10 at 69.

[26] *Id.* at 56–68.

4

On February 3, 2016, while the PCRA appeal was pending, Petitioner filed a motion to remand. Petitioner claimed to have just discovered that the Affidavit of Probable Cause for his arrest—which had been provided as part of pre-trial discovery—made reference to a surveillance video from Happy Garden Restaurant. In the Affidavit, Detective Shawn Leahy stated: "Area businesses were also surveyed for video with positive results at one location, 501 W. York (Happy Garden Restaurant). Video was retrieved and available for all court proceedings. Tape has not, as of this time been reviewed by the assigned."[27] The Superior Court issued an order denying Petitioner's motion for remand and instructing the parties to address the issue in the briefing.

In its brief, the Commonwealth argued that additional photographs of the restaurant showed that what Petitioner claimed was an external camera was "in fact, a light fixture with two flood lights, connected by a wire to an electric junction box."[28] The Commonwealth also provided an email from Detective Leahy dated March 8, 2016:

> In response to your request in regards to the Jose Lopez case file DC#08-26-078043,1 have attempted to retrieve the file. However, I have come to learn that this, and other case files from the years 2011 and below have been disposed of. I can tell you from my recollection that the video from the Chinese Store was of the interior of the store only, thus it was not used during the legal proceedings against Lopez.[29]

On July 31, 2017, the Superior Court affirmed the order denying the PCRA petition without an evidentiary hearing.[30] The Superior Court also determined that "there is no proof of

---

[27] Doc. No. 5 at 34.

[28] Doc. No. 10 at 160.

[29] *Id.* at 169.

[30] *Commonwealth v. Lopez,* No. 3487 EDA 2015, 2017 WL 3225870, at *1 (Pa. Super. Ct. July 31, 2017).

5

record that a surveillance videotape of the exterior of Happy Garden Restaurant ever existed."[31] Petitioner timely filed the petition for writ of habeas corpus under 28 U.S.C. § 2254.

## II. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus may not be granted as to any claim that was adjudicated on the merits in State court proceedings unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[32]

A state court's decision is "contrary to" clearly established law if the state court applies a rule of law that differs from the governing rule set forth in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent."[33] A decision is an "unreasonable application" of clearly established law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."[34] The "unreasonable application" clause requires more than an incorrect or

---

[31] *Id.* at *6.
[32] 28 U.S.C. 2254(d).
[33] *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).
[34] *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).

erroneous state court decision; instead, the application of clearly established law must be "objectively unreasonable."[35]

Where, as here, the habeas petition is referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), a district court conducts a de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[36]

### III. DISCUSSION

Petitioner asserts two claims for relief: 1) that the failure to turn over the surveillance videotape violated the Commonwealth's duty under *Brady*; and 2) that trial counsel was ineffective for failing to request a limiting instruction, failing to investigate and call an alibi witness and request an alibi instruction, failing to request a malice instruction in connection with the aggravated assault jury charge, and failing to ensure that all sidebar conferences were recorded.

Petitioner does not object to the R&R's analysis of the claims that trial counsel failed to request a malice instruction or failed to ensure that all sidebar conferences were recorded. The Court accepts the R&R as to these claims.[37]

---

[35] *Id.*

[36] 28 U.S.C. § 636(b)(1).

[37] The Superior Court determined that Petitioner's claim regarding a malice instruction "lacked arguable merit" because there was "no requirement that malice be shown" and therefore a malice instruction would be "utterly irrelevant." *Lopez*, 2017 WL 3225870, at *5. The Pennsylvania courts found that the jury instruction was proper under state law, and federal courts are not permitted to review a state court's resolution of state law questions. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). As such, Petitioner's trial counsel cannot be ineffective for failing to raise a meritless argument. *See Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010).

The sidebar conferences issue was raised in Petitioner's PRCA petition and adjudicated by the PCRA Court, *see* Doc. No. 10 at 137, but was not raised in his PCRA appeal. Because of this, the issue is procedurally defaulted. *See*

### A. Petitioner's *Brady* Claim

Petitioner asserts that the Commonwealth violated *Brady* by suppressing the Happy Garden Restaurant surveillance video. The Superior Court held that this claim was waived under 42 Pa. C.S. § 9544(b) because Petitioner did not assert his *Brady* claim on direct appeal.[38] The R&R determined that this claim was procedurally defaulted, and Petitioner objects.[39]

"Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground."[40] Waiver under § 9544(b) is an independent state procedural ground and therefore the claim is procedurally defaulted.[41] Petitioner argues that procedural default should not apply "where, as here, the prosecution conceals exculpatory evidence."[42] Petitioner also accuses the assistant district attorney ("ADA") of making "materially false" statements to the PCRA Court, claiming that she "lied and stated there was no videotape."[43]

When a claim is procedurally defaulted, federal habeas review is only available where a petitioner can show "cause and prejudice."[44] In the *Brady* context, showing cause requires a

---

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[W]e conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Furthermore, Petitioner has made no showing of "cause and prejudice;" Petitioner has presented no argument in any of his filings that procedural default on this issue should be excused.

[38] *See Lopez*, 2017 WL 3225870 at *3. Under 42 PA. CONS. STAT. § 9544(b), "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." Petitioner first raised the *Brady* claim on appeal to the Superior Court from the dismissal of his PCRA petition.

[39] Doc. No. 15 at 18–23.

[40] *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017).

[41] *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 375 (3d Cir. 2018).

[42] Doc. No. 17 at 43.

[43] *Id.* at 16, 42.

[44] *Martinez v. Ryan*, 566 U.S. 1, 10, 17 (2012).

showing that the reason for default was the Commonwealth's suppression of evidence, and showing prejudice requires that the evidence be material for *Brady* purposes.[45] Petitioner cannot show either.

Petitioner levels a serious accusation that the ADA lied about the existence of the surveillance tape, but the statement made in 2015, that she searched and found no video, is consistent with the statement of Detective Leahy that a video of the interior of the restaurant had been retrieved in 2008, but that the casefile was destroyed in 2011. In any event, the Superior Court held that the waiver occurred when Petitioner failed to raise the issue on direct appeal; the ADA's statement was made later, during the PCRA proceedings. Petitioner could have raised the issue at trial or on direct appeal because the Affidavit of Probable Cause, which Petitioner claims is proof of the existence of the tape, was part of pre-trial discovery. Petitioner has not identified any objective factor that prevented him from doing so.[46]

Petitioner also cannot show prejudice, because he cannot show that a surveillance video of the exterior of the Happy Garden Restaurant ever existed. The Superior Court found "no proof of record" of the existence of the video,[47] and to rebut this determination of a factual issue, Petitioner must have "clear and convincing" evidence.[48] Petitioner argues that there is "no satisfactory explanation for why the police would seize a videotape of the interior of [Happy

---

[45] *See Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[46] *See Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (establishing cause requires a showing of "'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'").

[47] *Lopez*, 2017 WL 3225870, at *6.

[48] 28 U.S.C. § 2254(e)(1).

9

Garden Restaurant] when the assault occurred on the exterior" and that "[t]he only fair inference is that the videotape was exculpatory; otherwise, the police would have no interest in seizing footage from the interior."[49] But this is mere conjecture, not clear and convincing evidence. It is equally reasonable that the police would have obtained the video footage from the restaurant in case it was useful and then learn upon viewing it that it showed the interior, as Detective Leahy recalled. Without any evidence to the contrary, Petitioner cannot show prejudice.[50]

### B. Petitioner's Claim that Trial Counsel was Ineffective for Failure to Request a Limiting Instruction

Petitioner asserts that trial counsel was ineffective for failing to request a limiting instruction for "prior bad acts" evidence that Petitioner sold drugs. The Superior Court determined that Petitioner had failed to provide any evidentiary support for this claim, because he relied "upon only hindsight analysis and conclusory argument" and did not "even attempt to obtain supporting documentation."[51] The R&R determined that this claim was procedurally defaulted because the Superior Court's dismissal was under Pennsylvania Rule of Criminal

---

[49] Doc. No. 17 at 17.

[50] Petitioner also argues in his Objections that the Court should hold an evidentiary hearing regarding the alleged surveillance tape. Doc. No. 17 at 15. The Court determines that a hearing is not necessary as Petitioner has not explained what evidence would be presented at the hearing that would shed light on the issue.

Petitioner also asserts that trial counsel was ineffective for failing to investigate the Happy Garden Restaurant surveillance tape. But counsel cannot be ineffective for failing to investigate or procure a video tape that did not exist. *See Dial v. Sherrer*, 2005 WL 3465859, at *7 (D.N.J. 2005).

[51] *Lopez*, 2017 WL 3225870, at *5.

Procedure 902,[52] which provided an independent and adequate state law ground.[53] The Court need not determine if this provides an independent and adequate state law ground because Petitioner cannot show that he was prejudiced by the lack of a limiting instruction.

To meet the prejudice requirement under *Strickland*, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[54] Petitioner argues that "[t]he case against Petitioner was weak" and so there must be prejudice.[55] The jury heard that both Robinson and Petitioner sold drugs on the same corner, which was not discussed at length but was relevant in explaining a possible motive for the shooting and Robinson's ability to identify Petitioner. The jury heard eyewitness testimony of the victim, which the jury was entitled to credit, the jury also had evidence of the ammunition found in Petitioner's room. Thus, Petitioner cannot show that he was prejudiced by the lack of a limiting instruction.[56]

### C. Petitioner's Claim that Trial Counsel was Ineffective for Failure to Call an Alibi Witness and Request an Alibi Instruction

Petitioner asserts that trial counsel was ineffective in failing to call Jamie Eisenhuth as a witness, failing to investigate Eisenhuth, and failing to request an alibi instruction based on her

---

[52] Pennsylvania Rule of Criminal Procedure 902 states, in relevant part, that "(A) A petition for post-conviction collateral relief . . . shall contain substantially the following information . . . (12) the facts supporting each such ground that: (a) appear in the record, and the place in the record where they appear; and (b) do not appear in the record, and an identification of any affidavits, documents, and other evidence showing such facts" and "(D) The defendant shall attach to the petition any affidavits, records, documents, or other evidence which show the facts stated in support of the grounds for relief, or the petition shall state why they are not attached."

[53] Doc. No. 15 at 26.

[54] *Strickland*, 466 U.S. at 694.

[55] Doc. No. 17 at 24.

[56] *See Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) ("The ample if not overwhelming evidence of Albrecht's guilt, . . ., supports the conclusion that he suffered no prejudice as a result of counsel's deficient performance in not seeking a limiting instruction.").

testimony. The Superior Court analyzed Petitioner's failure-to-call claim under Pennsylvania law,[57] and held that Petitioner failed "to include information concerning Eisenhuth's 'availability to testify, as well as an adequate assertion that the substance of the purported testimony would make a difference in the case.'"[58] The R&R determined that the Superior Court's denial of this claim was not unreasonable,[59] and Petitioner objects.

This claim is unusual. Eisenhuth was called as a witness by the Commonwealth to testify as to where Petitioner was living at the time of the shooting.[60] She did not appear voluntarily and was an uncooperative witness. Before she testified, she refused an interview with the prosecution and did not give a statement.[61] While Petitioner argues that trial counsel was ineffective in not calling Eisenhuth, she appeared at trial and defense counsel did question her. Petitioner has not suggested what additional testimony she could have offered to assist the defense. Indeed, Petitioner has acknowledged that "Ms. Eisenhuth did testify so the precise nature of her testimony is known."[62] Because Eisenhuth did testify at trial, and Petitioner has not asserted that her testimony was incomplete, Petitioner has not shown prejudice in trial counsel's failure to call her as a witness.

Petitioner further argues that trial counsel failed to investigate Eisenhuth's possible testimony, and because of the failure, did not "take advantage of her testimony, and at least

---

[57] The Third Circuit has held that the "'Pennsylvania standard for a claim of ineffectiveness of counsel based on failure to call a witness" is not contrary to *Strickland*. *Moore v. DiGuglielmo*, 489 F. App'x 618, 626 (3d Cir. 2012).
[58] *Lopez*, 2017 WL 3225870, at *5 (quoting *Commonwealth v. Michaud*, 70 A.3d 862, 867 (Pa. Super. Ct. 2013)..
[59] Doc. No. 15 at 30.
[60] N.T., Trial, 12/13/10 at 38.
[61] *Id.* at 42.
[62] Doc. No. 17 at 32.

request an alibi instruction to which Mr. Lopez was entitled as a matter of law."[63] Petitioner asserts that Eisenhuth's testimony—that Petitioner slept in her bed every night while they dated—constituted an alibi for the night of the shooting.[64] Eisenhuth's testimony was not specific to the date and time of the shooting, and it was undercut by the letter she wrote to Petitioner that was read in Court. The letter stated: "[t]he only times I see you is when you're asleep, about to go out or in a fight. . . you would rather be in the street than be doing something with me."[65] Eisenhuth's testimony "did not establish that [Petitioner] was at a location different from the crime scene," and therefore did not present an alibi defense.[66] "Because an alibi instruction was not warranted, counsel cannot be deemed ineffective for failing to request the same."[67]

## IV. CONCLUSION

For the reasons stated above, the court overrules Petitioner's objections and approves and adopts the R&R. The Petition for Writ of Habeas Corpus is denied and there is no basis for the issuance of a certificate of appealability. An order will be entered.

---

[63] *Id.* at 38.

[64] *Id.*

[65] N.T., Trial, 12/13/10 at 60–61.

[66] *Commonwealth. v. Kolenda*, 676 A.2d 1187, 1191 (Pa. 1996).

[67] *Id.*